4-12-0257 David Edwards-Curran v. Workers' Compensation Comm'n It's basically based on our argument that the decision was against the manifest weight of the evidence according to the cases. When you take the fact that every one of the employees' witnesses testified that this incident that my client testified to, number one, did not happen, and then you take the fact that the employee's insurance company paid some $54,000 through his second operation. He was operated on May 15, 2008, and nine days later, or four days later, he had a collapsed lung. They took him back in, tore up all the operation, the first operation fixed, and all of this stuff started unwinding after that. Counsel, let me ask you, the time of accident allegedly was September 22, 2003, correct? Right. Did your client ever report a shoulder injury to Dr. Huddy or anyone else prior to seeking treatment in 2005? Did he ever report an injury? He reported an injury to the woman who got him the appointment with Huddy, and he also, according to his testimony, told Dr. Huddy about it, but Dr. Huddy did not show it in his records. Are you talking about Ms. King? Yes. Ms. King denied that she ever received a call from him. That's right. Denied that she ever requested a referral from a doctor. That's right. And yet, they paid the bill, and Dr. Huddy made a report and reported that he was injured lifting this grand piano. That's one of the things that go against the, in favor of our argument, that it's against the manifest way of the evidence. The Supreme Court in the act says that the voluntary payment of compensation by an employer does not constitute an admission of liability. That's right, but it does not say it affects anything else, and our argument is that it attacks the credibility of their witnesses, individually and collectively. Oh, wait a minute. Why? Well, because they would not have paid $54,000 on something that didn't happen. Wait a minute. They would have paid the $54,000 if they didn't find out until later it didn't happen, because they don't want to pay penalties on $54,000. Well, according to the cases that I cited, there would be no penalty if they have a substantial offense, and if every one of their witnesses says that this didn't happen, you have different people, different dates, denial of anything that happened here. In this case, you have to look at the broad, broad picture. Whose burden is it, though, counsel, whose burden is it to prove the claim? Let me ask you this. According to the record, your client told, he didn't report a shoulder injury to Dr. Huddy. He told Dr. Whalen that he hurt himself hammering a U-joint. He told the emergency room he did not suffer any recent injuries, and he told Dr. Coleman in 2005 that he had pain for about a year, but that it became more severe in the prior two weeks. So, if you're talking about credibility, your client makes all these statements to different individuals, and that one or two totally conflicting medically. What is the credibility there? Well, the credibility is that this was actually a dual nature. It's the time it started and the time it was a repetitive injury. And that, in our application, it said he hurt his back then on that date, and then it continued to get worse by his continual use of that shoulder. And that's one of our arguments in this appeal, is that they never ruled on the theory of a repetitive injury. They should have. He didn't know he injured his shoulder moving a piano on September 22nd? He did know he injured his shoulder. But he thought that when he went to Dr. Huddy, that because it helped his back, he said it also helped his shoulder. And he did not have it, he said it gradually got worse. Every time he worked real hard or didn't have help, or if he was lifting something heavy, his shoulder would twing. And then when he got to the place where he went to the doctor, because the pain got so bad, this thing had developed to the place where it was unbearable. But counsel, going back to what Justice Hudson was talking about, these contradictory versions of how it occurred, and I'm looking at, I think it's page three of your brief, at the top of that page it reads, contradictory statements as to how he was first injured to doctors in the emergency room at the hospital was because until he had an MRI, he didn't know for sure what it was, but knew it started and how it developed very slowly at first and so on. What was it about the MRI that would make him unsure, or the treatment prior to the MRI make him unsure as to how he was injured? Well, because he didn't know what was wrong with him, medically speaking. He knew it hurt. He knew it hurted his shoulder, that's all. But as to what the event was that caused him to hurt, what would the MRI have to do with, to what he attributed it to? Because in his mind and his memory, he could trace it back to that date in 2003. Except whatever the date was. Well, he says that he was working with this guy, Scott Keller. Right. Vitesla says it wasn't Keller, it was him. That's right. And Vitesla says they didn't move any piano, they moved an electric organ, it weighed 70 pounds, and the truck crushed it. That's right. McGrath turns around and says, you didn't fix any PTOs, I fixed all the PTOs. That's right. And then, in March of 2005, he's working on a truck with Marty Roberts, shows up with a sling, and says, Roberts testifies that he told him he'd been in a bar fight. That's right. If you didn't have the fact that he paid 54,000 bucks, I wouldn't even be here. Because there's all kinds of evidence that destroys his case. Every one of the employee's witnesses absolutely contradicted his testimony 180 degrees, and I'm here to tell you, gentlemen, that no one, if it never happened, which they say it never happened, no one would have paid 54,000 bucks. So that's essentially your argument. Your argument is it doesn't matter what the testimony was. That's right. The fact that they paid 54,000 means you should automatically win the appeal. No. Yes, I think that's the credibility. Now, like you say, the statute says it's not admission, but there's nothing in there that says it could not destroy the credibility of the witnesses. That's my argument. Well, your argument is, then, of essence reduced to the simplest term, that the only credible witness, in your opinion, is the claimant. All of these other individuals have no credibility. Right, right. Exactly, exactly. You're saying follow the money. Follow the money, absolutely. Not only that, this was a repetition, repetition, repetitious injury, and the court never examined that, never dealt with that, and I think on that basis alone it ought to be sent back and retried on that theory. Well, did you try it on that theory? Well, under impeditive trauma, did you try it on that theory? We tried it, but the arbitrator did not address it in her opinion. Well, if you didn't mention it, you can't raise a new theory on appeal for the first time here. No, but we mentioned that that was in the evidence, and that was raised in every level of this case, the repetitious injury. What did Dr. Emanuel say? Dr. Emanuel said, based primarily on this thing about being thrown to the floor in a bar fight, he said that there was no causal connection. Well, he also says there was no evidence in the record that the claimant performed the type of work that could cause a shoulder injury like his. He commented on a repetitive injury. He said it wasn't. My question is, if they had that argument, when they sent him to the first doctor, Dr. Gray, why wasn't that mentioned? It was never mentioned. When we took the depositions of the various doctors here, no one ever mentioned the fact that this didn't happen, which to me flies up and overrides. I just feel that when you take this whole thing together, and it all came up after he had the second operation, and it all came up after that, where they tore out what the first operation did, I think if there had been any basis, they would not have paid the money. Gentlemen, that's my argument. Thank you, Mr. Lowe. Thank you, gentlemen. Ms. Mermin, you may respond. May it please the Court, Counsel. My name is Maria Mermin, and I am here on behalf of the employer in this appeal. The employee here appealed the decision of the Commission. The Commission's decision was unanimously against him, and that is why he is bringing this appeal.  The only questions that we have, raised on appeal, are questions of fact. Which are to be decided by the Commission, and there's evidence to support that. What about his overarching question or theory, if you will, that he keeps opining, why would the employer pay money for an accident that never happened? How do you answer that basic charge that he's alleging? Justice Hudson, by law, the payment of benefits is not an admission of liability. But in the real world, he's saying, okay, I understand the statute. He has to live with that. But why would any employer in the real world pay money for an accident, $54,000, if it never happened? What's your response to the real world question? Your Honor, we made a mistake. However, again, the payment of benefits is not an admission of liability, and we are, and this Court is bound by law. Well, why was the mistake made? I just had a curiosity. This is a burning curiosity question I think we have. Why would they spend so much money on something that never happened? Just tell us. Daniel, tell us. Your Honor, once again, the payment of benefits is not an admission of liability. That's not an answer to the question I asked you. We know that. Justice Hoffman, our client made a mistake, and they paid benefits. But since the only questions that are raised in the appeal are questions of fact and the manifest weight of the evidence standard governs... Well, your client didn't pay the benefits. We're dealing with the county, aren't we? Yes. Okay. And you probably have third-party indemnity, correct? Do you know? Do you know? I mean, the county is paying out their own funds. Are they submitting a claim to an insurance company? Your Honor, the insurance company paid the benefits. So what you're saying is the county's administration made a mistake and submitted a claim to the compensation carrier. Is that what you're saying likely happened as opposed to some type of group medical insurance carrier? Correct. I like that answer. I just came up with it. Okay, thank you. Your Honor, the only questions The opposing counsel is making an interesting claim about though it can't be used as a liability admission can it not be used as to call into question this apparent unanimity of fellow county workers that nothing ever happened all of these things just never occurred. Correct, Your Honor. What the employee's counsel is trying to say that somehow because we paid benefits the employee's witnesses cannot be trusted. That's hysterical. This is incorrect. In fact, the employee's witnesses were not the ones that paid benefits. It was the insurance company that did. There is no evidence in the record that witnesses even knew that the benefits were paid. And whether or not they knew that the benefits were paid, whether or not the witnesses are credible, these are all factual questions. The Commission is the sole body that weighs the evidence. They listen to the testimony. They listen to the witnesses. And they unanimously found in favor of the employer. And that's why I'm saying this is a simple case. It's the Commission's province to weigh the credibility of the witnesses and the weight to be given to the testimony and the evidence. That's what they did. And it's not contrary to the manifesto. That's correct, Your Honor. In fact, there is sufficient, significant evidence in the record that supports the Commission's decision. Let's take a look at what happened two days after the alleged accident on September 24, 2003. The employee goes to Dr. Hardy, the chiropractor, and he says to Dr. Hardy that he injured his back, not shoulder. Once again, he did not say shoulder. We deposed Dr. Hardy and Dr. Hardy testified that the employee didn't mention anything about the shoulder. Then, he does nothing for two years and on March 4, 2005, he goes to a different doctor and gives a completely different history of the accident. Three days after that, the employee goes to the ER and gives a completely different history of the accident. He didn't mention anything about the shoulder for like a year and a half or almost two years after that, right? Yes, Your Honor, that's correct. I think we understand the argument. Your Honor, here's the point. All of these are factual questions. Whether or not these things happened, whether they happened with a baby grand piano, a huge joint, or in a bar fight, these are all questions of fact. The Commission heard the testimony, looked at the evidence, the manifest weight governs this appeal, and therefore the decision of the Commission should be affirmed and adopted in its entirety. So are you saying that the Commission's decision should be affirmed if we just put aside this apparent uniform testimony against the claimant by fellow co-workers and county employees who might have a motive that the admissions of the claimant made in intakes seeking medical treatment would be enough to support the decision? Yes, Your Honor, that's correct. Based on the evidence alone that is enough to support the Commission's decision. And in conclusion, Your Honor, this Court cannot reweigh the evidence. The record of arbitration contains dozens of facts that support the decision of the Commission. And as such, this decision cannot be set contrary to the manifest weight of the evidence standard. Well, at least it shouldn't. Be very careful of the could not. Not that we would. We shouldn't do it. We shouldn't say we can't do it. And, Your Honor, once again, since all of the only factual questions were raised, the Commission's decision is well-founded in this transcript, and therefore, Your Honor, I respectfully ask this Court to affirm and adopt the Commission's decision in its entirety. Thank you. Thank you, Ms. Mermin. Mr. Logue, you may reply. Just a moment or two. This is kind of a case of first impression. I felt obligated to take this appeal because there's a basic contradiction here. You have the employees, witnesses, individual and collectively said, this never happened. And, on the other hand, they paid $54,000. Something's wrong somewhere. Thank you. Thank you, Mr. Logue. This matter will be taken under advisement. Written disposition shall issue. Court will stand in recess until 1.30 this afternoon.